**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| PETE WRIGHT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:19-cv-3230-AGF |
| | ) | |
| BILL ANDERSON, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court upon the filing of a second amended complaint by self-represented plaintiff Pete Wright, a civilly committed resident at the Sexual Offender Rehabilitation and Treatment Services Center ("SORTS") in Farmington, Missouri.  (ECF No. 7).  The Court previously granted plaintiff *in forma pauperis* status and reviewed his amended complaint under 28 U.S.C. § 1915.  (ECF No. 4).  Based on that review, the Court directed plaintiff to file a second amended complaint on a Court-provided form and in compliance with the Court's instructions.  For the reasons discussed below, the Court will dismiss plaintiff's claims against defendants Bill Anderson, Dr. Kimberly Bye, and Denise Hacker pursuant to 28 U.S.C. § 1915 for failing to state a claim upon which relief may be granted.

**The Complaint and Amended Complaint**

Plaintiff is in the custody of the Missouri Department of Mental Health ("MDMH") and is being detained at SORTS.  On December 9, 2019, plaintiff filed his original complaint pursuant to 42 U.S.C. § 1983 against Bill Anderson, Unit Manager at SORTS.  (ECF No. 1).

On June 8, 2020, plaintiff filed a seventy-five-page handwritten amended complaint accompanied by thirty-three pages of exhibits.  (ECF No. 3).  Named as defendants in the amended

complaint included Bill Anderson and five additional defendants: Mark Stringer (Director, MDMH); Dr. Kimberly Bye (Director of Treatment, SORTS); Cynthia Hackathorn (Director of Treatment Program, SORTS); Kyle Pinkley (Nurse Supervisor, SORTS); and David Schmitt (Chief Operating Officer, SORTS).  Plaintiff brought his claim against all defendants in their official and individual capacities.

Plaintiff's claims related to numerous separate events that allegedly occurred from "September 10, 2018 to beyond filing this civil action."  Among his many claims, plaintiff alleged that Schmitt, Bye, and Anderson permitted his legal materials to be confiscated without notice; denied his requests for additional time to access a computer for the purpose of conducting legal research; failed to inform him that SORTS had "video-court" capabilities; obstructed plaintiff from attending hearings; and failed to provide him with requested legal materials.

As to Stringer, Schmitt, Bye, Anderson, Hackathorn and Pinkley, plaintiff alleged they had a custom and policy of not providing him with written SORTS procedures; improperly permitted staff members to watch him shower, masturbate, and sleep; allowed "behavioral worksheets" to be issued against him in violation of unpublished rules; and denied him a personal television, DVD player, indoor fitness program, flash drive, art supplies, and other benefits.

As to Stringer and Hackathorn only, plaintiff alleged they failed to hire, train or supervise competent employees and engaged in a conspiracy with the Missouri Department of Corrections to "ignore . . . the opinion that plaintiff does not a have a mental abnormality."  Plaintiff repeatedly stated that modern DNA testing would exonerate him from guilt, although it was not apparent from the complaint that he intended to allege false arrest or habeas corpus relief.

2

Plaintiff further alleged that all defendants improperly placed him on "total ward restriction" which denied him access to indoor or outdoor recreation without notice and failed to establish "screening procedures and devise a systematic, authoritative mechanism to authenticate a jury's decision." Plaintiff alleged that those actions amounted to disparate treatment. Plaintiff further stated that in 1985 he co-founded an R&B musical act named "Kinfunk," and subsequently released a vinyl record. Plaintiff alleged that the defendants violated his due process rights by "obstruct[ing] [his] ability to purchase and possess musical equipment and instruments." Plaintiff also claimed that his First Amendment rights were being violated by "denying him [the] right to order magazines directly from a publisher and restricting CD purchases." The complaint continued with numerous additional claims and allegations.

For relief, plaintiff sought over $6,000,000 in compensatory damages, $15,000,000 in punitive damages, as well as injunctive and declaratory relief. Plaintiff requested a different amount of damages from each individual defendant.

On July 9, 2020, the Court reviewed plaintiff's amended complaint pursuant to 28 U.S.C. § 1915 and determined that it was subject to dismissal for failure to comply with Rules 8(a) and 20(a)(2) of the Federal Rules of Civil Procedure. (ECF No. 4). Specifically, the Court found that the amended complaint failed to include "a short and plain statement of the claim" and improperly advanced "numerous claims against multiple defendants concerning unrelated events that occurred over approximately a two-year period." (*Id.* at 4-5). Because plaintiff was self-represented, the Court entered an order giving him the opportunity to file a second amended complaint to cure the deficiencies. In that order, the Court provided plaintiff with clear instructions about how to prepare his complaint. (*Id.* at 6-7).

Plaintiff has now filed a second amended complaint, which the Court reviews pursuant to 28 U.S.C. § 1915(e)(2).

## Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e), the Court is required to dismiss a complaint filed *in forma pauperis* if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id*. at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements. *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016); *see also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that a court must accept factual allegations in the complaint as true but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a complaint filed by a self-represented person under 28 U.S.C. § 1915, the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even self-represented complainants are required to allege facts which, if true,

state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *see also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (refusing to supply additional facts or to construct a legal theory for the self-represented plaintiff that assumed facts that had not been pleaded). In addition, affording a self-represented complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## The Second Amended Complaint

On July 24, 2020, plaintiff filed a second amended complaint against three of the seven defendants named in his first amended complaint: Bill Anderson (Unit Manager, MDMH and SORTS); Dr. Kimberly Bye (Director of Treatment Services, SORTS); and Denise Hacker (Chief Operating Officer, MDMH and SORTS). (ECF No. 7). Plaintiff brings his claims against all defendants in their official and individual capacities.

Plaintiff alleges that between September 10, 2018 and July 15, 2020 he was "denied liberty and his property without notice" in violation of his due process rights when Anderson and Bye ordered MDMH staff to "confiscate plaintiff's legal materials while he was litigating several active cases," "limit personal property without a rational connection to a safety or security concern," and "physically restrained plaintiff under a procedure called 'total ward restriction.'"

Plaintiff further alleges that from July 2019 to March 3, 2020, Hacker "directed plaintiff's incoming and outgoing mail withheld without notice to him." Plaintiff states that he filed letters and grievances with Anderson, Bye, and Hacker "requesting copies or citations of published procedures that authorized confiscation of property and physical restraint." Plaintiff claims that

5

Anderson "stated in several responses, he did not have to provide policy or procedure to plaintiff for any reason." Plaintiff asserts that "state statutes mandate procedures be written and provided to patients on site, at the facility." Plaintiff also asserts that "state statute allows plaintiff to communicate, associate and meet privately with persons of his choice and to send and receive his personal mail unopened."

Plaintiff seeks injunctive and declaratory relief to prevent defendants from further confiscation of his legal materials and denial of his personal property. Plaintiff also seeks $2,000,000 in compensatory damages.

## Discussion

Having carefully reviewed and liberally construed plaintiff's allegations, and for the reasons discussed below, the Court must dismiss plaintiff's claims.

### A. Official Capacity Claims against Anderson, Bye, and Hacker

The three named defendants are alleged to be employed by either the MDMH or the SORTS facility, which are departments or subdivisions of the State of Missouri. Naming a government official in his or her official capacity is the equivalent of naming the government entity that employs the official. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *see also Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (stating that a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent"). "[N]either a State nor its officials acting in their official capacity are 'persons'

under § 1983." *Id.  See also Kruger v. Nebraska*, 820 F.3d 295, 301 (8th Cir. 2016) ("a state is not a person for purposes of a claim for money damages under § 1983").

Moreover, a claim against the State of Missouri is barred by the doctrine of sovereign immunity.  "Sovereign immunity is the privilege of the sovereign not to be sued without its consent." *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253 (2011).  The Eleventh Amendment has been held to confer immunity on a nonconsenting State from lawsuits brought in federal court by a State's own citizens or the citizens of another State.  *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974).  *See also Webb v. City of Maplewood*, 889 F.3d 483, 485 (8th Cir. 2018) ("The Eleventh Amendment protects States and their arms and instrumentalities from suit in federal court"); *Dover Elevator Co. v. Ark. State Univ.*, 64 F.3d 442, 446 (8th Cir. 1995) ("The Eleventh Amendment bars private parties from suing a state in federal court"); *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 618-19 (8th Cir. 1995) ("Generally, in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment").

There are two "well-established exceptions" to the sovereign immunity provided by the Eleventh Amendment. *Barnes v. State of Missouri*, 960 F.2d 63, 64 (8th Cir. 1992).  "The first exception  to Eleventh Amendment immunity is  where  Congress has  statutorily  abrogated such immunity by clear and unmistakable language." *Id*.  The second exception is when a State waives its immunity to suit in federal court.  *Id*. at 65. A State will be found to have waived its immunity "only where stated by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction." *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 473 (1987).

Neither exception applies in this case. First, there is no congressional abrogation of Eleventh Amendment immunity. Plaintiff brings this action pursuant to § 1983 and the United States Supreme Court has determined that § 1983 does not revoke the States' Eleventh Amendment immunity from suit in federal court. *See Will*, 491 U.S. at 66 ("We cannot conclude that § 1983 was intended to disregard the well-established immunity of a State from being sued without its consent"); *Quern v. Jordan*, 440 U.S. 332, 341 (1979) ("[W]e simply are unwilling to believe . . . that Congress intended by the general language of § 1983 to override the traditional sovereign immunity of the States"). Second, the State of Missouri has not consented to the suit. Specifically, the State's statutory waiver of immunity does not include the type of claims made by plaintiff in this case. *See* Mo. Rev. Stat. § 537.600.

Thus, because a state is not a "person" for the purposes of § 1983 and a suit against the state is barred by the Eleventh Amendment, plaintiff's claim against defendants Anderson, Bye, and Hacker in their official capacities will be dismissed under 28 U.S.C. § 1915(e)(2)(B). *See Murrell v. Sheets*, 2014 WL 3818282, at *2 (E.D. Mo. Aug. 4, 2014) (dismissing official capacity claims against SORTS employees); *Johnson v. Blake*, 2012 WL 3064264, at *2 (E.D. Mo. July 27, 2012) (dismissing official capacity claims against MDMH employees).

**B. Individual Capacity Claims against Anderson, Bye, and Hacker**

*1. Confiscation of Legal Materials*

Plaintiff alleges that between September 10, 2018 to July 15, 2020 Anderson and Bye ordered MDMH staff to "confiscate plaintiff's legal materials while he was litigating several active cases." Plaintiff does not identify the legal materials that were allegedly confiscated or how he suffered an actual injury to any of his "several active cases." To state a claim for denial of

meaningful access to the courts a plaintiff must assert he "suffered an actual injury to pending or contemplated legal claims." *Myers v. Hundley*, 101 F .3d 542, 544 (8th Cir. 1996); *see also Lewis v. Casey*, 518 U.S. 343, 351 (1996) (right of access-to-courts requires showing a non-frivolous legal claim was actually impeded or frustrated); *Duncan v. Schafer*, 2011 WL 2039558, at *2 (E.D. Mo. May 25, 2011) (dismissed plaintiff's complaint for injunctive relief based on an access to court claim as frivolous because plaintiff failed to allege he suffered an actual injury).

Plaintiff only provides a conclusory assertion that he was "deprived of the ability to sufficiently prepare for civil commitment trial" and "retain discovery" in four civil actions. Plaintiff cites to these cases in his second amended complaint but does not provide any facts to support actual prejudice or injury.[1]  Plaintiff has not identified any pleading or paper he was unable to file or stated any specific discovery deadline he was unable to meet which negatively affected his legal claims.  *See e.g.*, *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (holding dismissal of access to court claim proper where inmate relied on conclusory allegations and failed to identify any actual injury).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555. Because plaintiff has not alleged facts to support actual prejudice or injury to any pending or contemplated legal claims, the Court will dismiss this claim pursuant to 28 U.S.C. § 1915(e)(2)(B).

---

[1] The Court reviewed the docket sheets and filings in plaintiff's five cited cases.  In *Wright v. Poor*, Case No. SC98556 (Mo. 2020), plaintiff filed a petition for writ of mandamus with the Supreme Court of Missouri on June 2, 2020 and, to date, no discovery has been required.  In *Wright v. Missouri Dept. of Mental Health*, Case No. 4:18-CV-1981 (E.D. Mo. Nov. 20, 2018), *Wright v. Mosher*, Case No. 18VE-CV00327 (28th Jud. Cir., Vernon Cty.), and *Wright v. Vernon Cty. Sheriff's Office*, Case No. 18-CV-5043 (W.D. Mo. May 25, 2018), the records appear to reflect that plaintiff actively participated in litigation and filed papers as required. As to Case No. 17P8-PR01027, a probate proceeding in the Circuit Court of Jackson County, Missouri, plaintiff waived legal representation and appears to have actively participated in the proceedings.

9

*2. Limited Access to Personal Property*

Plaintiff alleges that between September 10, 2018 to July 15, 2020 Anderson and Bye ordered MDMH staff to "limit [his] personal property without a rational connection to a safety or security concern" in violation of his due process rights. Plaintiff does not state what type of limitations were placed on his access to personal property or identify the property allegedly confiscated.

Plaintiff's claim that defendants Anderson and Bye ordered the MDMH to limit unspecified personal property is simply too broad and conclusory. Persons committed to the state's custody by means of a civil proceeding retain liberty interests in essential care items such as adequate food, shelter, clothing, and medical care. *See Youngberg v. Romeo*, 457 U.S. 307 (1982); *see also Kennedy v. Schafer*, 71 F.3d 292, 294 (8th Cir. 1995) (noting that involuntarily committed persons unquestionably have a protected liberty interest in a safe and humane environment). Plaintiff does not allege that he has been denied any essential care items.

Moreover, although the due process clause may be implicated when a detained individual suffers a loss of property, if the taking of property is intentional and the state provides an adequate postdeprivation remedy, there is no violation of due process. *Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984) (availability of damages remedy in state claims court is an adequate, post-deprivation remedy); *see also McGee-El v. Hartegan*, 2008 WL 5071107, at *2 (E.D. Mo. Nov. 24, 2008) ("There is no cause of action under 42 U.S.C. § 1983 for unconstitutional taking of personal property where the state provides an adequate postdeprivation remedy."). In other words, if the state provides an adequate remedy, plaintiff has no civil rights claim under § 1983. The State of Missouri provides the post-deprivation remedy of replevin for the recovery

10

of personal property, Mo. R. Civ. P. 99.01-99.15, and a common-law remedy for conversion. *Hardesty v. Mr. Cribbin's Old House, Inc.*, 679 S.W.2d 343, 347 (Mo.Ct.App. 1984); *see also Knight v. M.H. Siegfried Real Estate, Inc.*, 647 S.W.2d 811, 814 (Mo.Ct.App. 1982).

Because plaintiff has failed to allege a deprivation of a constitutional right and the state provides a postdeprivation remedy, the Court finds that his claim against defendants related to the confiscation of his personal property should be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

   3.  *Physical Restraint by "Total Ward Restriction"*

Plaintiff alleges that between September 10, 2018 to July 15, 2020 Anderson and Bye ordered MDMH staff to "physically restrain[] plaintiff under a procedure called 'total ward restriction'" in violation of his due process rights.  Plaintiff states that this decision was "counter therapeutic" and "capricious." Plaintiff does not, however, allege how a total ward restriction imposed an unconstitutional restraint.  For example, he does not allege how long the restriction was imposed or any facts permitting the inference that a total ward restriction occurred because of something other than a legitimate governmental objective.  *See Bell v. Wolfish*, 441 U.S. 520, 539 (1979) (being subjected to an administrative restriction or adverse condition does not amount to punishment invoking the due process clause if it is "reasonably related to a legitimate governmental objective," such as maintaining institutional order and safety).

Persons committed to the state's custody by means of a civil proceeding retain constitutionally protected liberty interests to reasonable safety, reasonable freedom from bodily restraint (e.g., use of handcuffs, shackles, etc.), and such reasonable training or treatment as may be required by these interests. *Youngberg*, 457 U.S. at 324.  The Supreme Court, however, has made clear that, when evaluating whether a civil detainee's due process rights have been violated,

11

in deciding whether the care provided is adequate or whether the restraint is reasonable, the courts must defer to the decisions of professionals:

> the decision, if made by a professional, is presumptively valid; liability may be imposed only when the decision made by the professional is such a substantial departure from accepted professional judgment, practice or standards as to demonstrate that the person responsible did not base the decision on such judgment.

*Youngberg*, 457 U.S. at 323. In short, those responsible for a civil detainee's care and treatment do not have to employ the best possible alternative or use the least restrictive means available. *See Thielman v. Leean*, 140 F. Supp. 2d 982, 992 (W.D. Wisc. 2001) ("so long as [the] choice was made by a professional, it is presumptively valid even if it is not the best alternative"); *Collington v. Milwaukee County,* 163 F.3d 982, 990 (7th Cir. 1998) (mere disagreement about which of many professionally acceptable treatment plans should have been implemented does not make out a substantive due process claim).

Furthermore, the Court notes that, by definition, sexually violent predators are more likely to engage in predatory acts of sexual violence than other types of civil detainees. Mo. Rev. Stat. § 632.480 (2000). Due to their predatory nature and the threat of sexual violence, the confinement of sexually violent predators raises security issues that are different from those posed by other types of civil detainees. *Seling v. Young*, 531 U.S. 250, 261 (2001); *Kansas v. Hendricks*, 521 U.S. 346, 363 (1997).

Plaintiff's claim that Anderson and Bye violated his due process rights by ordering the MDMH to "physically restrain" him under a "total ward restriction" is broad and conclusory. Plaintiff fails to present facts supporting how a "total ward restriction" is a substantial departure from accepted professional judgment, practice or standards. Plaintiff's allegations that the restrictions were "counter therapeutic" or "capricious" fall into the category of mere disagreement

over how he, as a civil detainee, should be cared for and treated and do not indicate a complete

lack of professional judgment necessary to show a due process claim.  *See e.g.*, *Coffman v. Blunt*,

2005 WL 1474091, at *2-3 (E.D. Mo. June 22, 2005) (a claim based on personal disagreement

with an imposed security restriction does not rise to the level of a due process violation).

Because plaintiff has failed to allege a deprivation of a constitutional right, the Court finds

his claim related to the imposition of a "total ward restriction" should be dismissed pursuant to 28

U.S.C. § 1915(e)(2)(B).

### 4.  *Directive to Withhold Mail*

Plaintiff alleges that between July 2019 and March 3, 2020, Hacker "directed plaintiff's

incoming and outgoing mail withheld without notice to him."  Plaintiff does not allege, however,

that his mail was actually withheld from him or that any of his outgoing mail was not sent.

As a general rule, those detained by the government have a limited liberty interest in

their mail under the First and Fourteenth Amendments.  *Jones v. Brown*, 461 F.3d 353, 358 (3d

Cir. 2006), *cert. denied*, 549 U.S. 1286 (2007).  However, the constitutional right to send and

receive mail may be restricted for legitimate penological interests.  *See Thornburgh v. Abbott*, 490

U.S. 401, 407 (1989); *Turner v. Safley*, 482 U.S. 78, 89 (1987).  "[F]acilities housing civilly

committed predators have an interest in providing those persons therapy.  Consequently, they have

an interest in screening the mail to assure that the objectives of therapy can be carried out."

*Williams v. Wittrock*, 2015 WL 3649590, at *4 (N.D. Iowa June 11, 2015).  For example, a detained

individual may be restricted from accessing obscene materials or other communications that could

compromise the facility's safety and security.  *See e.g.*, *Harris v. Bolin*, 950 F.2d 547, 550 (8th

Cir. 1991) (screening mail and retaining obscene articles is not violative of First Amendment

rights);  *Carpenter v. South Dakota*, 536 F.2d 759 (8th Cir. 1976), *cert. denied,* 431 U.S. 931

(1977) (upholding ban on receipt of sexually explicit materials); *Thornburgh v. Abbott*, 490 U.S.

401, 415-19 (a policy which allows officials to reject incoming mail deemed detrimental to

security, does not violate the First Amendment); *Holloway v. Pigman*, 884 F.2d 365, 367 (8th Cir.

1989) (upheld the reasonableness of regulations which allow officials to return to the sender mail

that violates prison regulations without allowing inmates to protest).

Although the Court must liberally construe the complaint, it will not supply additional facts

or construct a legal theory.  *See Stone*, 364 F.3d at 914-15 (refusing to supply additional facts or

to construct a legal theory for the self-represented plaintiff that assumed facts that had not been

pleaded).  Plaintiff's allegations are overly broad and vague in that he does not set forth sufficient

facts to support a deprivation of his constitutional rights.  While plaintiff asserts that Hacker

directed staff to withhold his outgoing and incoming mail, he fails to allege that any of his mail was

actually withheld.  Thus, as presently stated in the complaint, his claim against Hacker fails to state

a claim upon which relief may be granted.  *See e.g.*, *Weston v. Blake*, 2008 WL 1805640, at *2

(E.D. Mo. Apr. 21, 2008) (plaintiff alleged that an employee at the Missouri Sexual Offender

Treatment Center ordered his staff to "steal mail;" however, the claim was dismissed because

plaintiff has failed to allege that any of his own mail was stolen).  As a result, the Court finds this

claim should be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

### 5.   *Denial of Grievances*

Plaintiff alleges that he wrote letters and filed grievances to Hacker, Anderson and Bye for

the purpose of "requesting copies or citations of published procedures that authorized confiscation

of property and physical restraint."  Plaintiff states that Anderson "stated in several responses, he

14

did not have to provide policy or procedure to plaintiff for any reason."  Plaintiff asserts that "state statutes mandate procedures be written and provided to patients on-site, at the facility."

This allegation simply does not rise to the level of a constitutional deprivation and is legally insufficient to establish a denial of rights secured under the Constitution or laws of the United States.  Plaintiff's claim is based on the denial of his grievance requests and that Anderson's responses were unsatisfactory pursuant to an unidentified state statute.  To state a cognizable claim under § 1983, a plaintiff must allege that the conduct of a defendant acting under color of state law deprived him of a right, privilege, or immunity secured by *the Constitution or laws of the United States*.  *See* 42 U.S.C. § 1983; *Hamilton v. Schriro*, 74 F.3d 1545, 1549 (8th Cir. 1996).  There is no federal constitutional right to a grievance procedure, and neither a state law nor a state policy creates one.  *See Poe v. Corizon Health*, 2019 WL 186660, at *4 (E.D. Mo. Jan. 14, 2019).  Therefore, if a state entity, such as the MDMH or SORTS, elects to provide a grievance mechanism, violations thereof will not give rise to a § 1983 claim.  *See Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (the grievance procedure is a procedural right only and confers no substantive right on an inmate); *Ingrassia v. Schafer*, 2012 WL 761143, at *7 (E.D. Mo. Mar. 8, 2012) (ruling against a [detainee] on an administrative complaint does not cause or contribute to the violation) (citing *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) (citations omitted)); *see also Reynolds v. Lombardi*, 2013 WL 6134018, at *2 (E.D. Mo. Nov. 21, 2013) (claim that officials failed to respond to letters is legally frivolous).

To the extent plaintiff can be understood to claim that defendants violated SORTS or state regulations by not providing him with a copy of written institutional polices, such a claim also fails because there is no federally protected interest in having state officers follow state law or

prison officials follow prison regulations.  *See Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003);
*see also Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997) (failure to follow prison policy is
not basis for § 1983 liability); *Bagley v. Rogerson*, 5 F.3d 325 (8th Cir. 1993) (allegation of state
law violation, statutory or decisional, does not, in itself, state a claim under federal Constitution
or § 1983).

Because plaintiff has failed to allege a deprivation of a constitutional right, the Court finds
this claim should be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).  *See Parratt v. Taylor*, 451
U.S. 527 (1981) (to establish a prima facie case under § 1983, a plaintiff must allege that the action
is a deprivation of a constitutional or federal statutory right).

### 6.   *In-Person Meetings and Screened Mail*

Plaintiff generally asserts that a "state statute allows plaintiff to communicate, associate
and meet privately with persons of his choice and to send and receive his personal mail unopened."
Plaintiff does not, however, allege that any of the named defendants denied him the ability to
communicate or meet with others or that they opened his personal mail.  As the Court explained
in its review of plaintiff's first amended complaint, "[l]iability under § 1983 requires a causal link
to, and direct responsibility for, the alleged deprivation of rights."  *Madewell v. Roberts*, 909 F.2d
1203, 1208 (8th Cir. 1990); *see also Jeffers v. Gomez*, 267 F.3d 895, 915 (9th Cir. 2001) (§ 1983
liability arises only upon a showing of personal participation by defendant); *Martin v. Sargent*,
780 F.2d 1334, 1338 (8th Cir. 1985) (claim not cognizable under § 1983 where plaintiff fails to
allege defendant was personally involved in or directly responsible for incidents that injured
plaintiff).  In order to state an actionable civil rights claim against each defendant, plaintiff must
set forth specific factual allegations showing what that particular defendant actually did, or failed

to do, that violated the plaintiff's federally-protected rights.  *See West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Ellis v. Norris*, 179 F.3d 1078, 1079 (8th Cir. 1999) (a plaintiff must plead facts showing each named defendant's personal involvement in the alleged constitutional wrongdoing); *Love v. Schoffman*, 142 F. App'x 278, 279 (8th Cir. 2005) (affirming district court's dismissal for the reason that "the complaint did not specify which of the many named defendants was responsible for each of the alleged harms.").

However, even if plaintiff did provide facts showing the personal involvement of the named defendants, he has not alleged how a restraint on his ability to communicate with others or a policy of screening his personal mail rises to the level of a federal constitutional violation.  *See e.g.*, *Harrod v. Halford*, 773 F.2d 234, 235 (8th Cir. 1985) ("[j]ailers are not required to take the extra time and effort to open mail in the inmate's presence when the mail is not confidential"); *McDonald v. Blake*, 2007 WL 1101221, at *2 (E.D. Mo. Apr. 5, 2007) (alleged opening of incoming personal mail addressed to a civilly-committed individual does not violate a resident's constitutional rights); *Bradford v. Semar*, 2005 WL 1806344, at *4 (E.D. Mo. July 28, 2005) (sexual offender treatment centers have a legitimate interest in limiting a resident's communications with those outside of the facility for the protection of those persons and for treatment purposes).  Also, as previously stated, an assertion that defendants failed to follow Missouri law does not amount to a § 1983 claim.  *See Bagley*, 5 F.3d 325 (allegation of state law violation, statutory or decisional, does not, in itself, state a claim under federal Constitution or § 1983).

To any extent plaintiff is alleging that the defendants are liable solely because they held administrative or supervisory positions, such claims are also subject to dismissal.  *See Boyd v.*

*Knox*, 47 F.3d 966, 968 (8th Cir. 1995) (*respondeat superior* theory inapplicable in § 1983 cases). A supervisor is liable for the actions of his subordinates under § 1983 only if he personally participates in the alleged unconstitutional conduct, or when there is a causal connection between his actions and the alleged constitutional deprivation.  *See Glick v. Sargent*, 696 F.2d 413, 415 (8th Cir. 1983) (warden must play a personal role in the disciplinary process; he cannot be held liable for the outcome of the process).

The Court provided plaintiff with the opportunity to amend his complaint and offered clear instructions that he must submit a complaint containing "a short and plain statement of the facts that support his claim or claims against [each] defendant" and "allege facts explaining how each defendant was personally involved in or directly responsible for harming him."  (ECF No. 5 at 6-7).  The Court further warned plaintiff that a "'Statement of Claim' requires more than 'labels and conclusions or a formulaic recitation of the elements of a cause of action."'  As stated above, plaintiff has failed to plead specific facts establishing an actual link or connection between the named defendants and the alleged constitutional violation.  Thus, this claim will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim.

Accordingly,

**IT IS HEREBY ORDERED** that this action is **DISMISSED** without prejudice for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B).  A separate order of dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that an appeal from this dismissal would not be taken in

18

good faith.

Dated this 12th day of August, 2020.

AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE